### UNITED STATES v. MAYER.

(District Court, W. D. Kentucky, at Owensboro. May 6, 1918.)

1. ARMY AND NAVY $\Longleftrightarrow$40—ESPIONAGE ACT—INTENT—EVIDENCE—I. W. W. CERTIFICATE.

Mere possession of an "I. W. W." certificate by one using abusive language against the United States and the President, without testimony of the real aims and purposes of that organization has no tendency to prove a charge against him, under Espionage Act, § 3, for willfully causing or attempting to cause insubordination, etc., in military or naval forces.

2. ARMY AND NAVY $\Longleftrightarrow$40—ESPIONAGE ACT—CAUSING INSUBORDINATION, ETC., IN "MILITARY OR NAVAL FORCES."

Men, merely because between the ages of 18 and 45 years, are not in the military or naval forces of the United States, within Espionage Act, § 3, denouncing willfully causing or attempting to cause insubordination, etc., in such forces.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Military Forces; Naval Forces.]

3. ARMY AND NAVY $\Longleftrightarrow$40—ESPIONAGE ACT—WILLFULLY OBSTRUCTING RECRUITING OR ENLISTMENT—INTENT.

Willful obstruction of, or willful attempt to obstruct, the recruiting or enlistment service, within Espionage Act, § 3, involving intent, is not proved by mere use of abusive language against the United States and the President among laborers of military age, at a place where no recruiting or enlistment service was going on or was in contemplation.

Criminal prosecution under the Espionage Act by the United States against Frank Mayer. Defendant's motion for directed verdict sustained.

P. B. Miller, Dist. Atty., and S. M. Russell, Asst. Dist. Atty., both of Louisville, Ky., for the United States.

Ernest P. Rowe, of Owensboro, Ky., for defendant.

WALTER EVANS, District Judge. There are two counts in the indictment in this case, only the first of which need receive any attention, inasmuch as it is practically conceded that the testimony does not establish the charge made in the second count. Leaving out of view the latter count, the indictment is based upon section 3 of the Espionage Act, approved June 15, 1917, and which, so far as pertinent, is as follows:

"Whoever, when the United States is at war, * * * shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall willfully

$\Longleftrightarrow$For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

obstruct the recruiting or enlistment service of the United States, to the injury of the service of the United States, shall be punished," etc.   40 Stat. 219, c. 30.

Charging generally in the one count these two offenses, the indictment avers:

"That said Frank Mayer did then and there use vile, abusive, and insulting language concerning the United States, the President of the United States, and the citizens of the United States, and did then and there state that he would like to destroy the United States, and that if he were put in the army he would kill American soldiers and fight for the Kaiser, the leader of the enemies of the United States, and did then and there make other statements obviously intended to arouse discontent and disaffection with the conduct of the war among those who should hear said statements, and did use the language tending to promote and cause an insubordinate, disloyal, and mutinous spirit in the military and naval forces of the United States, and said statements were made in a construction camp of the Illinois Central Railroad Company, at Providence, Ky., in the presence and hearing of a large number of men who constituted a part of the national forces of the United States, and liable to perform military duty in the service of the United States, and in the presence and hearing of divers other persons, the names of which said men liable to service and said other persons are to the grand jurors aforesaid unknown, and said statements were made by said Frank Mayer with the purpose and intent of causing and attempting to cause insubordination, disloyalty, mutiny, and refusal of duty as aforesaid."

The undisputed testimony showed that the defendant and all those who, it is supposed, heard what he said, were laborers employed in the work of building a short branch of the Illinois Central Railroad from Providence to Dawson Springs, in Kentucky.   These persons were all, at the time, engaged as laborers in the construction work of the railroad company near the first named of those towns, but at the moment all were off duty and in the camp.   No recruiting nor enlistment service of the United States was going on or was in contemplation there, nor was any part of the military or naval forces of the United States present when the alleged acts were done, nor when the utterances were made, unless all those personages present who were between the ages of 18 and 45 years, by virtue of that fact alone, are to be held to be part of the "military or naval forces of the United States" within the intent and meaning of the statutory provisions set forth above.

Other testimony tended to show that the defendant, in the presence of the persons described, and in the construction camp, used language abusive of the United States and of the President, which is much too indecent to be here inserted.  The defendant vehemently denied the use of any of the language imputed to him; but as he, at the close of all the testimony, moved the court to direct a verdict of not guilty, we shall, for the purposes of that motion, assume the truth of all the testimony offered by the United States.   Except as we have stated it to be undisputed, the testimony was limited to showing the disgustingly abusive character of what was said, and that at least two of the laborers at the camp who testified they heard what was said were persons 18, but under 45, years of age, and that others who heard it, but who did not testify, were described as appearing to be between those ages.

[1] No one of the persons present had ever been drawn or called into service under the Selective Draft Act (Act May 18, 1917, c. 15, 40 Stat. 76) or otherwise. It was, however, shown that the defendant had on him when arrested a certificate of membership in the Industrial Workers of the World (I. W. W.), though no testimony was offered as to what the real aims and objects of that organization were, except as shown by the certificate of membership. This testimony was objected to by the defendant, but the questions thus arising were left open for decision when the whole case should be developed, and we may now express the opinion that this mere certificate, without more, had no tendency to support the charge in the indictment, and the objection is sustained.

In this situation the decision of the pending motion must turn upon the two inquiries: (1) Whether the mere abuse of the United States or of the President in the grossly indecent language used by the defendant was sufficient to establish the charges made in the indictment; and, (2) whether all persons between the ages of 18 and 45 by virtue of that fact alone are, under the statute, made actual parts of the military and naval forces of the United States within the meaning of this criminal statute, which established general rules require to be somewhat strictly construed. The occurrences were shown to have taken place on December 31, 1917, at which time there was no statute in existence which made abuse of the United States or of the President a criminal offense, and as the use of this language was the only thing done, and was accompanied by no other act, did this, under the facts shown, establish the charge that the defendant "willfully caused or attempted to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States," or did it establish the charge that the defendant did "willfully" obstruct the recruiting or enlistment service of the United States, wher nothing of the sort was going on or was in contemplation at that point?

[2, 3] It was energetically argued on behalf of the government that it did so, because it was claimed that under the law every man in the country between 18 and 45 years of age and not an alien enemy was, by virtue of that mere fact, already in the military or naval service. To so hold would be a very forced construction. Grant that all such persons are thereby liable to be put into that service if called, nevertheless we are clearly of opinion that they are not yet in law or in fact "in the military or naval service of the United States" within the intent and meaning of section 3 of the Espionage Act. Nor under the circumstances shown can the use of such abusive language merely of itself and without more be held, under the circumstances indicated, to sufficiently prove a "willful" obstruction, or a willful attempt to obstruct, the recruiting or enlistment service of the United States. The persistent use of the word "willful" in the statute clearly shows that the intent to do the forbidden thing must be then in the mind or purposes of the accused.

For these reasons, our duty is to sustain the motion, and the jury will be directed to find the defendant not guilty.